UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DEBORAH SWEETLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CV-07-161-B-W |
| | ) | |
| STEVENS & JAMES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Stevens & James, Inc. (Stevens), a debt collection company, harassed Deborah Sweetland in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and the Maine Fair Debt Collection Practices Act (MFDCPA), 32 M.R.S.A. § 11001 *et seq.* Stevens has been defaulted. Following an evidentiary hearing on damages, the Court grants judgment in favor of Ms. Sweetland in the amount of $2,500.00 in actual damages, $250.00 in additional damages, and a total of $3520.00 in attorney's fees and costs.

**I.    STATEMENT OF FACTS**

**A.    Rob Harrison's Threatening Phone Calls**

Deborah Sweetland sustained a heart attack in April of 2007 and fell behind on paying her bills. By the fall of 2007, she had sought legal advice from Attorney Perry O'Brian about filing for bankruptcy. One of her outstanding debts was to Wayne's Landscaping & Logging (Wayne's) in the amount of $9,428.51. Wayne's referred the debt to Stevens for collection and in the early morning of October 25, 2007, Rob Harrison of Stevens telephoned Ms. Sweetland and demanded she remit payment of the Wayne bill. During the conversation, which lasted less than ten minutes, Mr. Harrison became increasingly aggressive and abusive. Ms. Sweetland

tried to explain to Mr. Harrison that she was filing for bankruptcy, but he would have none of it. He threatened to send a private investigator to her home to see what assets she had and he made it clear that he was going to extract the money from her one way or the other. Mr. Harrison was rude, loud, and nasty.

Mr. Harrison's tone and threats frightened Ms. Sweetland. She suffered an immediate anxiety attack, crying, shaking, and became nauseous and upset. She remained visibly shaken for five to six minutes and it took her about twenty minutes to calm down. Her daughter, Tammy, was with Ms. Sweetland when the call came in, but was about to leave for work; instead, she remained with her mother. Ms. Sweetland stayed anxious the rest of the day. If a dog barked or the telephone rang, Ms. Sweetland jumped.

Several days later, Mr. Harrison made another call to Ms. Sweetland. Again, he was threatening and rude. He repeated his promise to have someone visit her home and said the person was coming the very next day. Ms. Sweetland suffered another anxiety attack. She became upset, cried, broke out in a sweat, and was afraid to be home alone. She called her daughter at work and her daughter left work and came to her home to be with her.

Ms. Sweetland resolved to seek Mr. O'Brian's advice. Valerie Lingley, a paralegal, fielded a phone call from Ms. Sweetland and heard her complaints. Ms. Lingley told Ms. Sweetland that if Mr. Harrison showed up, she should call the police. Despite Ms. Lingley's efforts to give reassurance, Ms. Sweetland called Ms. Lingley repeatedly and continued to express her anxiety and concern. Ms. Lingley placed a call to Mr. Harrison. At some point, Mr. Harrison returned the call and left a phone message at the law firm, which itself was abusive and threatening. During the message, Mr. Harrison admitted he had made the calls to Ms. Sweetland.

After these two phone calls, Ms. Sweetland did not hear further from Mr. Harrison. Nevertheless, she continued to fret about whether he would appear. She called her doctor and was told she needed to be stress free due to her heart condition. For the next couple of weeks, Ms. Sweetland continued to worry. She had crying spells and her sleep was disturbed. She worried as she pulled into the driveway and she kept wondering why these people would not leave her alone. As time passed and she neither saw nor heard from Mr. Harrison, she began to feel better and after a couple of months, she returned to normal.

### B.     The Lawsuit

On October 17, 2007, Deborah Sweetland filed suit in this Court, alleging that by Mr. Harrison's actions on behalf of Stevens, the company had violated both the FDCPA and the MFDCPA. *Compl.* (Docket # 1). On January 10, 2008, Rodney Harrison, Jr. of Stevens moved for an extension of time until February 15, 2008, within which to answer Ms. Sweetland's Complaint. *Mot. for Resp. Extension* (Docket # 4). Magistrate Judge Kravchuk granted the motion, but warned Mr. Harrison that a corporation could only appear through legal counsel. *Order* (Docket # 5). Stevens went silent. On April 21, 2008, Ms. Sweetland moved for default and default judgment. *Req. for Entry of Default and Mot. for Default J.*; *Pl.'s Mot. for Entry of Default* (Docket # 9, 10). The Clerk entered default on April 23, 2008. (Docket # 11). On April 25, 2008, the Court entered an order requiring Ms. Sweetland either to give notice to Stevens of a scheduled damages hearing or file an affidavit setting forth facts sufficient for the Court to conclude that the concerns in *Key Bank v. Tablecloth Textile Co.*, 74 F.3d 349 (1st Cir. 1996), had been satisfied. *Order on Mot. for Default J.* (Docket # 12). A damages hearing was scheduled for June 18, 2008; Ms. Sweetland gave notice of the hearing to Stevens. *Aff. of Service* (Docket # 16). Ms. Sweetland, Tammy Sweetland, and Vickie Lingley testified at the

damages hearing, essentially to the facts set forth above.  No documentary evidence or expert testimony was submitted.  There is no claim for special damages; no lost wages and no medical, psychological, or prescriptive expenses; and no claim of physical injury.

## II.     DISCUSSION

### A.     The Law

Ms. Sweetland claims damages under the FDCPA and the MFDCPA; the statutory remedies for both claims, however, are identical.  *Compare* 15 U.S.C. § 1692k(a)(1), (a)(2)(A), (a)(3), *with* 32 M.R.S.A. § 11054(1)(A), (1)(B), (1)(D).  The Court will proceed under the FDCPA.  Under § 1692k, the Court is authorized to award "any actual damage sustained by such person as a result of [the] failure [to comply with the provisions of the law]."  15 U.S.C. § 1692k(a)(1).  In addition, the Court may award "such additional damages . . . but not exceeding $1,000."  *Id.* § 1692k(a)(2)(A).  Finally, if the civil action is successful, the Court may award "the costs of the action, together with a a reasonable attorney's fee."  *Id.* § 1692k(a)(3).

Courts have interpreted "actual damages" to include damages for emotional distress caused by the debt collector's statutory violation.  *Maxwell v. Fairbanks Capital Corp.* (In re *Maxwell*), 281 B.R. 101, 117-18 (Bankr. D. Mass. 2002); *Hart v. GMAC Mortgage Corp.* (In re *Hart*), 246 B.R. 709, 730 (Bankr. D. Mass. 2000); *McGrady v. Nissan Motor Acceptance Corp.*, 40 F. Supp. 2d 1323, 1338-39 (M.D. Ala. 1998); *Teng v. Metro. Retail Recovery, Inc.*, 851 F. Supp. 61, 68-69 (E.D.N.Y. 1994); *Donahue v. NFS, Inc.*, 781 F. Supp. 188, 193 (W.D.N.Y. 1991); *Carrigan v. Central Adjustment Bureau, Inc.*, 502 F. Supp. 468, 470 (N.D. Ga. 1980).  Although Ms. Sweetland's Complaint asserts a right to punitive damages, she did not reiterate this claim either before or after the hearing and it is doubtful, in view of the absence of a punitive damages provision in the statute and the presence of an additional statutory award not to exceed

$1,000, that punitive damages are available under the FDCPA in any event. *See Aronson v. Creditrust Corp.*, 7 F. Supp. 2d 589, 594 (W.D. Pa. 1998). Turning to the statutory damages not to exceed $1,000, it is generally held that an award of statutory damages is not dependent upon proof of actual damages. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780 (9th Cir. 1982).

**B.     Damages**

In assessing damages, the Court undertakes a two-part analysis: first, the extent of any actual damage; and, second, whether to award additional damages and, if so, how much to award up to $1,000. Ms. Sweetland seeks $15,000 in actual damages and the maximum $1,000 additional damage award.

**1.     Actual Damages**

Turning first to actual damages, the Court accepts the evidence that Ms. Sweetland became upset, anxious, and distressed after each call. She had suffered a heart attack about six months before Mr. Harrison's calls and her emotional response to these calls was likely heightened by her medical condition and her increased sense of vulnerability. Ms. Sweetland's decision to contact her attorney and her doctor about these calls confirms that she viewed them as more than a nuisance. The Court also accepts her testimony that she worried about whether someone would come to her house, but that over time, she gradually realized that Mr. Harrison was not going to make good on his threat. She fully recovered from any emotional trauma within a couple of months. There is no evidence that she sustained any physical injury or any lasting psychological damage and there is no evidence that she incurred any out of pocket expenses. Ms. Sweetland did not lose any time from work.

Based on the allegations in the Complaint, which are admitted by default, and the evidence at the hearing, the Court concludes that Mr. Harrison violated the debt collection provisions of the FDCPA. 15 U.S.C. § 1692d(2) ("use . . . language the natural consequence of which is to abuse the hearer"); 15 U.S.C. § 1692e(5) ("threat to take action . . . that is not intended to be taken"). Fortunately, however, his conduct was limited to two direct phone calls within a brief period and one later phone message to Ms. Sweetland's attorney.

Mr. Harrison's actions, though improper, are less egregious than the conduct described in other cases. In *Teng*, for example, the debt collector falsely represented that he was from the City Marshal's office, that there was a judgment against the debtor, and that he was going to "pop a lock" on the debtor's mother's apartment, remove all the household furniture, place it in storage for thirty days, and "auction it off." *Teng*, 851 F. Supp. at 63-65. In another instance, the debt collector falsely informed the debtor that there was a "family crisis overseas" and there was an "emergency and it was urgent to call him." *Teng*, 851 F. Supp. at 63-66. The *Teng* Court awarded only $1,000 in actual damages.

In *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182 (D. Del. 1991), the District Court granted a motion for new trial on a jury verdict of $15,000, unless the plaintiffs accepted a remitter of $12,000, reducing the award to $3,000. *Id.* at 190. In *Smith*, the debt collector had sent four letters to the plaintiffs that violated the FDCPA, but the plaintiffs had suffered no out of pocket expenses and sustained only emotional injuries. *Smith* is not unlike Ms. Sweetland's case. Mr. Smith was bedridden, Ms. Smith was six and a half months pregnant, and the couple was deeply in debt and had already filed for bankruptcy when the dunning letters arrived. *Smith* at 191-92.

Also, in *Donahue*, where like this case, the defendants were defaulted and where the plaintiff sustained emotional injuries from the defendants' improper debt collection actions, the Court awarded only $100.00 in actual damages. *Donahue*, 781 F. Supp. at 192-94. However, in *Donahue*, the Court concluded that a portion of the plaintiff's damages was attributable to the collection efforts of other agencies and that nexus between the defendants' actions and the totality of the plaintiff's complaints was not established.

In assessing actual damages, the Court notes that it would be improper to award Ms. Sweetland an amount greater than the evidence would justify. The purpose of the actual damages portion of the statute is to fairly compensate the plaintiff, not to punish or deter the defendant. *Cf. Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) (discussing damages provisions in the FDCPA). In view of the absence of any special damages, the confined period within which the two calls were made to Ms. Sweetland, the fact the calls and other contact to her ceased entirely, and the fact the claim was limited to emotional damages alone, the Court finds that the demand of $15,000 grossly overshoots the mark. It awards Ms. Sweetland $2,500 in actual damages.

### 2. Additional Damages

In determining any "additional damages" award under § 1692k(a)(2)(A), the law directs the court to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). Here, Mr. Harrison's noncompliance was neither especially frequent nor persistent; it consisted of only two calls directly to Ms. Sweetland and one phone message to the law firm. The nature of the noncompliance included the use of a loud and threatening tone of voice, abusive language, and a threat to have a private investigator come to Ms. Sweetland's

property. But, Mr. Harrison's actions are not nearly as reprehensible as much of the prohibited conduct set forth in the statute, which ranges from threatening to arrest the debtor to accusing her of committing a crime. *Id.* § 1692e. Though there is no direct evidence Mr. Harrison intentionally violated the statute, the Court infers from his complete cessation of contact with Ms. Sweetland once an attorney became involved that Mr. Harrison knew that his calls to her were improper. The Court imposes an award of additional damages in the total amount of $250.00.

### 3. Attorney's Fees

The statute authorizes an award of attorney's fees "in the case of any successful action to enforce the foregoing liability." *Id.* § 1692k(a)(3). Attorney O'Brian submitted an affidavit, which itemizes 17.8 hours of time at the hourly rate of $175.00 for a total of $3,115.00. *Aff. of Attorney's Fees and Costs* (Docket # 9-7). He submitted a request for costs in the amount of $718.50. *Id.* The Court awards attorney's fees in the total amount of $3,115.00; it disallows $313.50 in asserted costs as non-recoverable and awards $405.00 in costs.

## III. CONCLUSION

The Court orders judgment in favor of Deborah Sweetland against Stevens & James, Inc., in the amount of $2,750.00 plus attorney's fees and costs in the total amount of $3,520.00.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of July, 2008